BAYNE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1912.)

1. UNITED STATES (§ 70*)—CONTRACTS—CONSTRUCTION.

A contract for the construction for the United States of a bridge over a river required the contractor to drive 206 piles or more of about 30 feet in length to such a depth that the pile would not penetrate 5 inches or more under a specified number of blows. Because of the nature of the subsoil, longer piles were necessary, and a supplemental contract provided that if the engineer officer in charge of the work should deem it necessary to drive any number of piles to a greater depth than 33 feet, the United States should pay the contractor the actual cost of furnishing and driving the same less a specified sum for each pile which was the estimated cost of a 33-foot pile in place. To perform the work contemplated, the contractor furnished 191 piles over 33 feet in length, but in driving the same it was found that it was necessary to drive only 89 of such piles to a greater depth than 33 feet, but the contractor furnished and started to drive 191 piles of sufficient length to be driven more than 33 feet if necessary. Held, that the supplemental contract imposed on the engineer officer the duty of determining whether it was necessary to drive a pile more than 33 feet before it was driven, and where he refused to exercise his best judgment until after the piles were driven, the contractor was entitled to compensation for the actual cost of driving 191 piles which could have been driven more than 33 feet, less the sum fixed for driving a 33-foot pile in place.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 53; Dec. Dig. § 70.*]

2. APPEAL AND ERROR (§ 1149*)—FINDINGS OF FACT—CORRECTION OF ERRORS.

Where the error of the trial court as to a finding of fact arose out of an erroneous construction of a contract, the Circuit Court of Appeals, though without power to find the facts for itself, has power to correct the erroneous finding by correctly construing the contract, and render judgment accordingly, without a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. § 1149.*]

3. UNITED STATES (§ 73*)—CONTRACTS—ESTOPPEL.

Where a supplemental contract for the construction for the United States of a bridge over a river contemplated that the contractor should furnish 191 piles over 33 feet in length for a specified compensation, and the piles were driven under the direction of the engineer officer in charge of the work who at no time objected to the driving of the piles, the United States was estopped, after the piles were driven, from claiming that the officer in charge deemed it necessary to drive only those piles which were actually driven more than 33 feet, and the contractor was entitled to recover the contract price for driving 191 piles.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 56; Dec. Dig. § 73.*]

4. CONTRACTS (§ 154*)—CONSTRUCTION.

Where a contract is capable of a construction in accordance with justice and fair dealing, the court will adopt such construction, instead of a construction which will entail loss on a party to the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 735; Dec. Dig. § 154.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by A. Y. Bayne and others, copartners as Bayne & Hewett, against the United States of America. There was a judgment grant-

ing insufficient relief, and plaintiffs bring error.   Reversed and entered.

James D. Shearer (Welch & Shearer and Frank C. Brooks, on the brief), for plaintiffs in error.

Charles C. Houpt, for the United States.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge.   Bayne & Hewett brought suit against the United States to recover the sum of $4,432.88, which they claimed was a balance due them on a contract and supplemental contract entered into between them and the United States on December 21, 1907, for the construction of a bridge across the Mississippi river at Ft. Snelling, Minn.   The action was brought under the provisions of Act March 3, 1887, c. 359, 24 Stat. 505 (U. S. Comp. St. 1901, p. 752), and was tried to the court.   Findings of fact and conclusions of law were made upon which judgment was rendered in favor of Bayne & Hewett for $1,002.50.   Finding of fact No. 7 is as follows:

"In constructing the center pier the plaintiffs used 243 piles, 191 of which were over 33 feet in length; but of these 191 only 89 were driven more than 33 feet, and it was deemed necessary by the engineer officer to drive no more than 89 to a depth of more than 33 feet."

The sum for which judgment was rendered was the amount which the United States had withheld as a penalty for delay in performance of the contract.   The trial court held that the delay was caused by the United States and not by Bayne & Hewett; therefore that no penalty accrued to the United States.

The actual cost of driving 191 piles more than 33 feet, less $9 for each 33-foot pile in place, was $4,750.60.   This amount, less $1,320.22 paid by the United States before suit was brought for driving 89 piles more than 33 feet, plus the sum of $1,002.50 wrongfully withheld for delay in performance of the contract, is the sum for which judgment was asked by Bayne & Hewett, viz., $4,432.88.

In order that the real situation of the parties may be understood, it is necessary to set out in full paragraph No. 4 of the specifications attached to the original contract, and the supplemental agreement referred to in the findings of fact:

"Fourth. Under the center pier shall be driven 206 piles, or more if required by the engineer in charge, spaced about 3 feet C. to C. in each direction.   Piles to be about 30′ in length and spaced as shown on plan.   The piles shall be of straight, sound, live timber, free from cracks, shakes and rotten knots, of a good quality of pine or oak.   They must show an even gradual taper and must have a dimension of not less than 12″, 3′ from the butt and at least 6″ at the small end.   The bark must be removed from the piles.   Piles shall be well and carefully driven so as to be plumb and true to line and distance.   They shall be shod with cast-iron points, where required by the engineer in charge, and fitted with rings at the top while driving, or driven with a follower.   They are to be driven full length, or to such depth that the pile will not penetrate 5″ or more under ten successive blows of a 3,000 pound hammer dropping 20 feet.   After being driven, piles are to be sawed off below low water line, as directed by the engineer in charge.   Around the pier, outside of sheet piling, shall be driven a row of piling which are to be cut off at a higher elevation, to support the sheet piling."

"(1) This supplemental agreement entered into this fourth day of May, nineteen hundred eight, between Major Francis R. Shunk, Corps of Engineers, United States Army, of the first part, and Bayne & Hewett, a copartnership consisting of A. Y. Bayne, W. S. Hewett and A. L. Hewett of Minneapolis, in the county of Hennepin, state of Minnesota, of the second part, witnesseth, that the said Major Francis R. Shunk for and in behalf of the United States of America, and the said Bayne & Hewett, do covenant and agree, to and with each other, as follows:

"That whereas the nature of the sub-soil at the center pier of the bridge across the Mississippi river now being constructed under contract between the said Major Francis R. Shunk, corps of engineers, for and in behalf of the United States of America, and the said Bayne & Hewett, entered into December twenty-one (21) nineteen hundred and seven (1907), is such that longer piles are necessary than are provided for in the specifications forming part of said contract:

"Now, therefore, it is agreed that the party of the first part shall pay to the party of the second part, in addition to the sums provided for in the aforesaid contract, the actual cost, to be agreed upon between the party of the first part and the party of the second part, of furnishing and driving such number of piles as may be deemed necessary by the engineer officer to drive to a greater depth than thirty-three (33) feet, less the sum of nine dollars ($9.00) for each such pile, the estimated cost of a thirty-three (33) foot pile in place, provided that it is distinctly understood and agreed that the additional payment to be made under this supplemental agreement shall in no case exceed the sum of five thousand dollars ($5.000) or be such as to increase the total cost of the bridge, including all expenses connected therewith, above the sum of two hundred and fifty thousand dollars ($250,000).

"It is hereby further understood and agreed that, except as herein specifically set forth, the contract dated December 21, 1907, shall remain in full force and effect."

Subsequent to the making of the findings of fact and conclusions of law, counsel for Bayne & Hewett moved the court to amend finding of fact No. 7 by striking out the last two lines of said finding and adding thereto the following:

"All piles that were driven by plaintiffs were so driven under the direction and supervision of the defendant's engineer officer in charge of the work."

The motion to amend was overruled. · This ruling is assigned as error, and, we think, correctly. There was no evidence that the engineer officer did not deem it necessary to drive more than 89 piles to a depth of more than 33 feet. On the contrary, there was no dispute in the testimony which established the fact that all piles driven by the plaintiffs were so driven under the direction and supervision of the defendant's engineer in charge of the work. Capt. George W. Freeman, a witness called by the United States, testified as follows:

"Q. You are an assistant engineer? A. Yes, sir. * * *
"Q. Were you in immediate charge of the construction of the Ft. Snelling bridge? A. I was. * * *
"Q. From the beginning to the end? A. Yes, sir. * * *
"Q. What were your duties in charge of that bridge with respect to the driving of piles? A. To see that they conformed to the specifications.
"Q. That is, as to penetration? A. Yes, sir; and also the kind of piles, whether they were of proper quality and all that sort of thing.
"Q. Quality and penetration? A. Yes, sir.
"Q. You exacted of the contractors that the piles should be driven to the required point of resistance, did you? A. Yes, sir."

On cross-examination the witness also testified:

"Q. All the other piles were driven under your direction? A. All the piles were driven under my direction.

"Q. And you never at any time during the completion of the center pier ordered them to stop using long piles? A. I did not; no, sir.

"Q. You approved, did you not, of their doing that work as they did it? I mean as to the use of the length of piles which they made use of? A. As I answered Mr. Houpt, I did, on account of their having them on hand.

"Q. They did not have them on hand until they sent for them, did they? A. No, sir; I didn't tell them how many to send for.

"Q. You felt that it was a matter that you didn't want to take the risk of? A. It was up to the contractors.

"Q. When they began to use long piles, before using them they had to rebuild the derrick and the hammer, did they not? A. The pile driver; yes, sir. They had to make some changes in it. I don't know that it was rebuilt. The gins had to be lengthened."

Horace Dunaway, a witness called by the defendant, testified as follows:

"Q. Are you by profession an engineer? A. Yes, sir. * * *

"Q. You were the inspector at the construction of the Ft. Snelling Bridge? A. Yes, sir.

"Q. What were your duties there? A. To watch the progress of the work and to see that it was carried on according to the specifications, and keep the office in St. Paul notified of the condition of things. * * *

"Q. As such inspector, was it part of your work to inspect the driving of piles? A. Yes, sir.

"Q. What did you do in that regard with respect to the driving of piles? A. Well, I inspected the piles to see that they were suitable; and watched the driving of them to see that they were properly placed, and driven until they met the specifications."

While it appears that all the piles were driven under the direction of the engineer in charge of the work in behalf of the United States, it also appears that said engineer would have nothing to say when asked by the plaintiffs as to the necessity for driving any particular pile. He took the position, as expressed by Capt. Freeman, that "it was up to the contractors." This position on the part of the engineer renders it necessary to examine the original and supplemental contract.

[1] Under section 4 of the specifications attached to the original contract, plaintiffs agreed to drive 206 piles or more of the length of about 30 feet. They were to be driven full length or to such a depth that the pile would not penetrate 5 inches or more under ten successive blows of a 3,000-pound hammer dropping 20 feet. When plaintiffs began to drive the piles, it was found that owing to the nature of the subsoil at the center pier of the bridge longer piles than those required by the original specifications were necessary. Therefore the supplemental contract was entered into. This contract changed the length of the pile to 33 feet. By the supplemental contract, plaintiffs agreed to drive the 33-foot piles full length for the contract price. It was, however, further agreed that if the engineer officer should deem it necessary to drive any number of piles to a greater depth than 33 feet, then the United States should pay plaintiffs the actual cost of furnishing and driving the same, less the sum of $9 for each pile; the said $9 being the estimated

cost of a 33-foot pile in place. In other words, the furnishing of a pile that could be driven more than 33 feet and the driving of such pile more than 33 feet was extra work for which the plaintiffs were to be paid the actual cost, thereof.

In order to perform the work as contemplated by the supplemental contract plaintiffs furnished 191 piles which were over 33 feet in length, but in the driving of the same it was found that it was necessary to drive only 89 of these piles to a greater depth than 33 feet, but the plaintiffs had to furnish, and did furnish, and started to drive, 191 piles of sufficient length as to make it possible for them to be driven more than 33 feet if necessity required. In case the requirement of the contract in regard to penetration was satisfied before the 33 feet was reached, it became necessary to cut off the piles after they were driven, sometimes twice.

It·is manifest that it could not be determined to a certainty whether it was necessary to drive a pile more than 33 feet or not until the pile was driven. The supplemental contract, however, did not require any such test. It was sufficient, according to the terms thereof, that the engineer officer should deem it necessary to drive the pile to a greater depth than 33 feet. Now in all fairness, when was the engineer officer to say what he deemed necessary? Surely, not after the pile was driven, as this power would carry with it the power to compel the removal of the pile if he should decide that it was, unnecessary to have driven it. Plaintiffs cannot be held to have made any such·unreasonable contract as to agree to perform this work subject to the right of the engineer officer to decide as to its necessity after the work was done.

The supplemental contract imposed upon the engineer officer the duty of determining whether it was necessary to drive a pile more than 33 feet before it was driven. It may be answered that this fact. could not be determined to a certainty in advance of the driving of the pile. Conceding this proposition to be true, it by no means follows that the engineer officer could not deem it necessary or consider it necessary without mathematical demonstration. The right to property is often determined upon evidence no more satisfactory than was before the engineer officer before the piles were driven. All that was required was his best judgment. He refused to exercise his ·best. judgment until after the piles were driven. There was then no occasion for exercising it. The contract did not provide for the payment ·of the actual cost of driving all piles that were actually driven more than 33 feet, but such piles as the engineer officer should deem necessary to be driven more than 33 feet. This contemplated the determination of such necessity before the pile was driven. As all piles were driven under the direction of the engineer officer, finding No. 7 ought to have been amended as requested by counsel for the plaintiffs.

[2] We might reverse the judgment and order a new trial for this error, as we have no power to find the facts in the case ourselves; but the error of the court as to finding No. 7 arose, as seems to be conceded, out of the fact that the trial court viewed the pro-

visions of the supplemental contract differently from the views expressed by us. The correct construction of the contract involved the determination of a question of law, and as under our construction of the contract we are of the opinion that the engineer officer in charge of the work and directing the driving of the piles must be held to have deemed it necessary that the 191 piles which could have been driven to a depth of more than 33 feet should be driven, there would seem to be no necessity for a new trial.

[3] We are further of the opinion that as the piles were driven under the direction of the engineer officer in charge of the work on the part of the United States, and he at no time objected to the driving of the same, that after the piles were driven the United States are estopped from claiming that the officer in charge did not deem it necessary to drive only those piles which were actually driven more than 33 feet.

[4] If the construction of the contract adopted by the trial court shall prevail, the plaintiffs will suffer an actual loss of $3,430.38. If this is the only possible construction, they cannot complain; but if the contract, without doing violence to its terms, is capable of a different construction more in accordance with justice and fair dealing, then under a well-recognized rule of construction we should adopt the latter. This being our view, it would seem unnecessary to order a new trial, especially as both parties have confined their argument in this court to the proper construction of the contract. We therefore reverse the judgment entered by the trial court and remand the case, with directions to enter judgment for the plaintiffs in the sum of $4,432.88, with costs as provided by law.

And it is so ordered.