## THE MANHATTAN. *

### H. C. JONES & CO., Inc., v. ATLANTIC TRANSPORT CO., Limited.

* (Circuit Court of Appeals, Fourth Circuit.   October 21, 1922.)

#### No. 1978.

I. Damages ☞117—Measure for breach of contract stated.

The true principle on which damages are assessed for breach of contract is that the injured party shall receive such amount as he would have been entitled to if the contract had been performed.

2. Shipping ☞108—Purchaser of cargo space on particular vessel cannot be required to accept substitute.

A purchaser of cargo space on a designated vessel has the right to insist on performance of the contract, and cannot be required to ship on a substituted vessel.

3. Shipping ☞108—Measure of damages for breach of contract of affreightment.

Libelant contracted with respondent for cargo space for 5,000 bushels of wheat on a designated steamship from Baltimore to Hamburg, and contracted for sale of the grain at Hamburg to the German government. At respondent's request libelant attempted to obtain buyer's consent to shipment on another vessel, which it offered to give only on a reduction in price of the grain. Respondent refused to make a like reduction in freight, or to furnish the ship contracted for, and the grain was not shipped. *Held*, that libelant was under no duty to ship on the substituted vessel, with incidental loss of profit, but was entitled to recover from respondent its full damages for breach of the contract.

Cross-Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by H. C. Jones & Co., Incorporated, against the Steamship Manhattan; the Atlantic Transport Company, Limited, claimant. Decree for libelant, from which both parties appeal. Reversed on libelant's appeal.

For opinion below, see 276 Fed. 823.

Edward M. Hammond, of Baltimore, Md. (Albert S. Gill, N. Rufus Gill & Sons, and Karr, Hammond & Darnall, all of Baltimore, Md., on the brief), for appellant and cross-appellee.

William J. Dean, of New York City (Burlingham, Veeder, Masten & Fearey, of New York City, and Lord & Whip, of Baltimore, Md., on the brief), for appellee and cross-appellant.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge.   This is an appeal and cross-appeal in admiralty from a decree of the United States District Court for the District of Maryland, rendered on the 14th day of December, 1921. The parties will be referred to by their titles in the lower court, viz. libelant and respondent.   The facts in the case are briefly these:  On the 20th of March, 1921, the respondent gave the libelant the refusal of cargo space on the steamship Manhattan from Baltimore to Hamburg for 10,000 quarters of heavy grain.   On the 23d of March the libelant, through the North American Forwarding Corporation, accepted space for 3,000 quarters, and on the 24th of March for a fur-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 260 U. S. ——, 43 Sup. Ct. 248, 67 L. Ed. ——.

ther 2,000 quarters of wheat, having sold the grain to the German Food Commission, to be shipped in the month of April, at the price of 19½ guilders per 100 kilos. The Manhattan was to arrive at Baltimore, and expected to sail on or about the 15th day of April, 1921. These two contracts will be considered as one, as they are identical in terms, and were made under the same circumstances and conditions.

At the time of procuring space on the ship, libelant asked to have the freight contracts read "Manhattan or substitute," and to provide for shipment during the latter half of April, the time during which the Manhattan was expected to sail; but the respondent was only willing to offer space on the Manhattan for the time specified. Accordingly, libelant's contracts of affreightment in terms provided for shipment on that ship to sail about April 15th. On April 7th, respondent notified libelant that the Manhattan would be delayed, and asked to be allowed to substitute the Maryland for the Manhattan to take the wheat. Libelant refused this, without the consent of the purchaser of the wheat, and immediately endeavored, at respondent's request, to secure the purchaser's assent to the change of ships. The respondent urged libelant to effect this change, and the latter did everything possible to that end, without avail, and finally, upon respondent's notifying libelant that the Manhattan would in no event be used, the latter again earnestly urged the purchaser to consent to the new proposition to ship on the Maryland, which the German Food Commission, the purchaser, by cable received on Sunday, April 17th, conditionally did, as follows:

"Einfuhr [German Food Commission] will not accept without an allowance. Claim an allowance of one guilder substitution Maryland. Leave offer in force until Monday. Best that can be done."

This offer was promptly communicated by the libelant to the respondent, and the latter's attention called to the fact that it would only be in force until Monday, the day after the receipt of the cable from the purchaser. The respondent did not accept this offer, though it was notified that to do so would involve the loss of but one-third of the damages that would be incurred by the Manhattan through the breach of its contract. Libelant also called up the home office of the respondent in New York, and urged acceptance of the offer to ship on the Maryland. No favorable response followed, and libelant was informed that it could get redress in court, and that in no event would the damages recovered be equivalent to the cost to respondent of attempting the shipment on the Manhattan. Libelant duly tendered the wheat for shipment upon the Manhattan, and advised its purchaser that it could not accept the proposal to purchase at the reduced rate for shipment on the Maryland, as it would prejudice its claim against the Manhattan. Libelant thereupon gave notice to the respondent that the wheat would be sold on their account, and sale was duly made at the Baltimore Chamber of Commerce by public auction, in accordance with the rules of the Chamber, realizing therefrom $10,689.23 less than would have been the net return, had the grain been carried by the Manhattan and delivered to the purchaser at Hamburg. Libelant incurred two items of cost, one for cablegrams of $197.03, and the other difference in exchange $744.10, which added to the amount realized from the sale,

made an aggregate of $11,630.36, to recover which amount the libel was filed.

The District Court decreed in favor of the libelant for $3,937.27, the amount the libelant would have lost if it had accepted the offer to sell at the reduced rate of 18½ guilders, instead of 19½, and shipment had been made on the Maryland, from which appellant appealed, and the respondent filed its cross-appeal, claiming that only nominal damages should be allowed. There is no dispute as to the making of the contract nor the breach of the same, and but little difference as to the facts; the sole question being, what is the true measure of damages?

[1] The true principle upon which damages are assessed for breach of contract is that the injured party shall receive such an amount as he would have been entitled to if the contract had been performed. The rule in this class of case is well settled. In The Oregon v. Pittsburgh & L. A. Iron Co., 55 Fed. 666, quoting from page 673, 5 C. C. A. 229, 235, Chief Justice Taft, then Circuit Judge sitting on the Circuit Court of Appeals for the Sixth Circuit, said:

"Where one contracts with a carrier to transport ordinary merchandise, having a market value, from one point to another, the profit which both he and the carrier may reasonably expect him to make out of the transaction is the difference between the market value of the merchandise at the point of destination and the market value at the point of shipment, less the freight under the contract. The pecuniary difference between the shipper's condition with the contract performed and his condition if the merchandise is not shipped, but remains at the point of shipment, is this profit, which is therefore, his legal damage."

This measure of damages was accepted approvingly by a recent decision of this court in Luckenbach v. Grace (C. C. A.) 267 Fed. 676, certiorari denied 254 U. S. 644, 41 Sup. Ct. 14, 65 L. Ed. 454. Ample authority will be found to support this view of the measure of damages. Reference especially may be had to Harrison v. Stewart, 11 Fed. Cas. No. 6,145, a decision of Chief Justice Taney; Rossend Castle (D. C.) 30 Fed. 462; O'Conner v. Forster, 10 Watts (Pa.) 418; Brackett v. McNair, 14 Johns (N. Y.) 170, 7 Am. Dec. 447; 3 Sedgwick on Measure of Damages (1912 Ed.) § 842; 36 Cyc. 209; 7 Am. & Eng. Ency. of Law (2d Ed.) 292; Carver's Carriers at Sea, § 723.

The District Court, while conceding the libelant's loss to be as sued for, did not assess his damages in accordance with the views herein expressed, but held that, because of its failure to ship at the reduced price by the Maryland, recovery could be had for only $3,937.27, the amount of the reduced offer of purchase and certain incidental expenses. With this conclusion and allowance of damages we are not in accord, as well because the same is predicated upon the obligation to ship the cargo on the Maryland at a reduced price, which we do not think the facts in this case warrant, as because it is evident that the court's estimate of damages is made upon the theory that the goods were shipped at an increased cost, as distinguished from a case where they were never shipped at all. Here no shipment of grain was made. The respondent had abrogated its contract. The libelant lost the en-

tire profits arising from its sale, and we do not concur in the view that the damages should have been limited to the difference between what was contracted to be paid, had shipment been made on the Manhattan, and the proposed reduced price for shipment on the Maryland for respondent's accommodation.

We will consider the several suggestions of the respondent why the libelant should not recover the usual damages as above indicated:

First, that respondent was not aware at the time of entering into the contract for space that libelant had sold the grain to be transported, or that the purchaser was the German government. Suffice to say, assuming this position to be tenable, it is manifest that the respondent had requisite information or notice of the facts. The District Court so specifically held, with which holding we are in full accord.

[2] Secondly, that the purchaser had no right to insist upon shipment being made exclusively on the Manhattan. This contention is equally without merit. The contract was for shipment on that vessel at a specified time, refusal of substitution of another vessel by the respondent being denied positively, and upon the consummation of the contract to ship on the Manhattan the purchaser was entirely within its rights in so insisting. This principle is well recognized in maritime contracts. The reasons therefor are manifest, and the right free from doubt. Filley v. Pope, 115 U. S. 213, 220, 6 Sup. Ct. 19, 29 L. Ed. 372; Bazin v. Liverpool, etc., S. S. Co. Fed. Cas. No. 1152; Higginson v. Weld, 14 Gray (Mass.) 165; 7 Am. & Eng. Enc. of Law (2d Ed.) tit. "Contracts of Affreightment and Charter Parties," 211, par. 8; 36 Cyc. 98, tit. "Shipping."

[3] Thirdly. Respondent insists that the libelant should have accepted the buyer's proposition to ship upon the Maryland at a guilder below the sale price. This likewise is without merit. The consent of the purchaser to accept the shipment upon the Maryland at a guilder less was given at the earnest solicitation of the respondent, to relieve it of the obligation to ship upon the Manhattan. This request was repeatedly refused, but finally assented to if the price was reduced from 19½ to 18½ guilders per 100 kilos, the same to be accepted during Monday, the day following the offer of the purchaser. Having secured this concession in order to avoid an open breach of the contract to ship on the Manhattan, the respondent should forthwith have accepted or declined the offer, and in case of acceptance, by making good or indemnifying the libelant for its loss of 1 guilder per 100 kilos. This would have avoided all question of damage and loss, and was only what respondent in good faith and fair dealing should have done. Instead, it allowed the time in which to accept the proposition to pass by, and then attempted to place the libelant in a position of default for failure to keep its contract. In other words, though the respondent openly and boldly repudiated its contract, and admitted it could better afford to take the consequences and stand loss in damages than carry out the same and ship on the Manhattan, it now modestly seeks to place the responsibility for loss arising from its own admitted default upon the libelant. The latter, under the circumstances, was

entirely within its rights, and fully warranted, in refusing to reduce the price of its wheat in order that it might be shipped on the Maryland, and thus relieve the respondent of responsibility under its contract of affreightment to ship the same on the Manhattan at the higher price, thereby visiting the loss directly upon the libelant.

The District Court held the libelant liable for the failure to accept the reduction in price of the wheat, and ship the same on the Maryland under protest, notifying the respondent that it was so made, and that the Manhattan would be held responsible for the loss in the difference in price. Just how the libelant could have done this, with a respondent who failed to accede to the proposition to carry the cargo on the Maryland at the reduced purchase price, until after the time for acceptance of the proposal had expired, is not apparent, and it by no means follows that the entering into of the agreement to transport the grain on the Maryland would not have relieved the Manhattan from responsibility. It was but asking the libelant, the party in no way in default, to hazard the risks incident to the admitted breach of the contract on the part of the respondent, the least of which would be to give up the difference in price as against the purchaser of the grain, and to involve itself in a lawsuit for the same against the party in default. It is manifest that no time was afforded the libelant within which to effect the shipment on the Maryland, by prompt acceptance or rejection of the new proposition.

Fourthly. The suggestion that libelant should have provided other means of transportation for the grain refused shipment by the respondent on the Manhattan is also without merit. That a shipper, if he can reasonably expect to reduce his losses by securing other transportation, should do so, is conceded. The authorities quite clearly establish this view. The Oregon v. Pittsburgh & L. A. Iron Co., supra, 55 Fed. 666, 5 C. C. A. 229; Grace v. Luckenbach (D. C.) 258 Fed. 49; Luckenbach v. Grace, supra (C. C. A.) 267 Fed. 676. Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117. Under the facts of this case, such a thing was utterly impracticable, as well by reason of lack of time, and inability to secure other means of shipment, as because there was but a single purchaser for the grain at the place of destination. The time of making shipment was limited to the month of April, and only 10 days of that month remained. Libelant was bound to secure space room upon general cargo boats bound for Hamburg, which could not have been secured in that time, and it was moreover entirely manifest that the German Food Commission would not have entered into further negotiations respecting this grain in the light of their experience with the other two ships upon which it had hoped to secure the same, and to effect such new arrangement, and make the shipment within the time allowed, was impossible.

The court's conclusion upon the whole case is that the breach of the contract by the respondent was flagrant and inexcusable, and that the libelant is entitled to recover the full damages arising therefrom, which the lower court fixed at $11,630.36, with interest from the 27th day of April, 1921, at 6 per cent. per annum, as found by that court, instead of the damages actually decreed to be paid the libelant by said court, of $3,937.27.

This cause will be remanded to the District Court, to the end that it may carry out the views herein expressed.

Reversed.

WOODS, Circuit Judge. I concur on this ground: When respondent breached its contract to carry the grain on the Manhattan, it was the duty of the libelants to use due diligence to minimize their damages resulting from the breach. The damages would have been greatly reduced by acceptance of the offer of the respondent to carry the grain on the Maryland and the offer of the purchaser to allow the change on condition of a reduction in the price of the grain of 1 guilder for each 100 kilos. But when the libelants asked the co-operation of the respondent in this method of reducing the damages, and respondent deliberately withheld its co-operation, it deprived itself of the right to allege the libelants should have adopted that method.