### C. C. MENGEL & BRO. CO. v. HANDY CHOCOLATE CO.

(Circuit Court of Appeals, First Circuit. January 26, 1926.)

No. 1909.

1. Contracts ⬡163—Written insertions in printed contract prevail over inconsistent printed provisions.

Written insertions in printed contract prevail over inconsistent printed provisions.

2. Sales ⬡176(3)—Buyer's refusal of tender on specified ground held not to preclude defenses on other grounds; "waiver;" "estoppel."

Buyer, by refusal of seller's tender on specified ground, was not precluded by theory of waiver or estoppel from making other defenses; "waiver" being intentional relinquishment of a known right, and "estoppel" requiring that other party change his position.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel; Waiver.]

3. Appeal and error ⬡1010(1)—Circuit Court of Appeals held authorized to determine whether there was any substantial evidence to support finding.

Where seller excepted to court's refusal to rule that on all the evidence judgment must be for plaintiff, Circuit Court of Appeals was authorized to determine whether, under proper construction of sale contract, there was any substantial evidence to support finding for buyer.

4. Sales ⬡83—Ineffectual tender from vessel held not election, precluding subsequent tender from warehouse.

Under contract for sale of cocoa for "shipment July-Sept. from the Gold Coast or via Liverpool or equivalent dely. from Whse. N. Y.," title not to pass until delivery in New York, subject to inspection by buyer's broker, held, that seller had right to choose, within contract time, delivery from vessel from Gold Coast or warehouse, and tender from vessel, properly refused because of quality, was not election, precluding subsequent seasonable tender from warehouse.

**5. Customs and usages ⊜⇒17—Contract held plain on face, and evidence of custom limiting "equivalent delivery from warehouse" held inadmissible.**

Contract for sale of cocoa for shipment from Gold Coast, "or equivalent dely. from Whse. N. Y.," *held* plain on its face, and evidence of custom limiting term "equivalent delivery from warehouse" to about 30 days from last permissible sailing date, was inadmissible, under rule that written contract cannot be controlled, varied, or contradicted by custom.

**6. Customs and usages ⊜⇒19(3)—Evidence held not to warrant finding of custom limiting term "equivalent delivery from warehouse," to certain period after last permissible sailing date.**

Evidence *held* not to warrant finding of custom of cocoa trade limiting term "equivalent delivery from warehouse" as alternative to delivery from vessel arriving to about 30 days after last permissible sailing date from point of shipment.

**7. Sales ⊜⇒181(9)—Evidence that another vessel arrived 3 weeks later than vessel carrying seller's goods held inadmissible, as immaterial.**

Where seller tendered cocoa from warehouse promptly on buyer's rejection of cocoa arriving on vessel from Gold Coast, as permitted by contract, court properly excluded seller's evidence that another vessel, taking shipment under same sailing date, arrived 3 weeks later.

**8. Sales ⊜⇒150(3)—Seller's tender of delivery from warehouse the same day buyer properly refused delivery from vessel held not too late.**

Under contract calling for shipment during July-September or equivalent delivery from warehouse seller's tender of cocoa from warehouse the same day buyer properly refused tender from vessel *held* not too late.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Action by the C. C. Mengel & Bro. Company against the Handy Chocolate Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Addison C. Burnham, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for plaintiff in error.

Philip N. Jones, of Boston, Mass. (Hurlburt, Jones & Hall, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an action for breach of contract. The plaintiff was the seller and the defendant the buyer of 50 tons of cocoa beans. The case was submitted to the District Court without a jury, and, without opinion or special findings of fact, that court entered judgment for the defendant.

[1] The controlling facts are undisputed. The contract was in writing, as follows:

"Cocoa Contract to Arrive.

"New York, July 7, 1920.

"Sold for Account of *C. C. Mengel & Bro. Co.* to the W. H. Miner Chocolate Co. Springfield, Mass.

"Quantity: *Fifty (50) tons (5% more or less).*

"Description: Usual good fair fermented Accra cocoa beans.

"Shipment: *July-Sept. from the Gold Coast or via Liverpool or equivalent dely. from Whse. N. Y.*

"Price: 13⅜c. cents per pound. Terms: *Net cash 10 days from weighing and delivery.*

"To be taken promptly by buyers on arrival ex dock at the port of New York and N. Y. weights to govern, usual tare.

"Each shipment to be considered a separate contract. Should any import duty, internal revenue, or any other form of tax be levied by the U. S. government on the cocoa embraced in this contract, it shall be assumed and paid for by the buyers.

"In case of loss, destruction, or seizure of cocoa or any part thereof, or abandonment thereof or any part thereof to underwriters, after shipment, this contract for such portion to be void and the amount sold reduced accordingly; in case the cocoa or any part thereof be transshipped within a reasonable time and arrive by any other vessel or vessels, this contract for such portion to hold good.

"Sellers not liable for contingencies beyond their control.

"Quality to be inspected and passed upon by the undersigned.

"Snyder & Wheeler, Brokers.

"Brokerage 1 % of sale. This also applies to any portion lost or damaged at sea."

The italicized portions are written insertions in a printed form. On familiar principles such insertions are to prevail over any inconsistent provisions in the printed form. Hagan v. Ins. Co., 186 U. S. 423, 428, 22 S. Ct. 862, 46 L. Ed. 1229.

Cocoa intended by the seller for the buyer was shipped from the Gold Coast prior to September 30 by the steamship Tuckanuck. This shipment arrived in New York on December 15, and was properly rejected

on December 18 by the buyer, because not of the specified quality. On the same day, the seller tendered the buyer the required quantity of cocoa from warehouse in New York. This tender was rejected by the buyer on December 20, in a letter, the pertinent part of which is as follows:

"We regret to advise that we are unable to accept a tender of 800 bags from store against this contract, you having previously notified the buyer that this cocoa was coming forward on the S. S. Tuckanuck afloat to New York. This cocoa duly arrived, was sampled and quality rejected by the buyers as not being up to contract requirements. In consequence of your having declared a specific lot, and this being duly tendered and rejected, does not give you the privilege of submitting or declaring another parcel.

"We submitted to you, by telephone, on Saturday proposition covering the 800 bags as tendered per S. S. Tuckanuck lately arrived. If you are not prepared to accept this, it will be necessary to cancel the contract."

It thus appeares that the seller's second tender (from the warehouse) preceded any claim of the buyer of a right to cancel. Defendant treated the contract as valid and outstanding until plaintiff rejected its offer of a reduced price for the cocoa on the Tuckanuck. The seller insisted on its rights to make the warehouse tender, and brought this suit.

On October, and perhaps in September, 1920, the buyer had made repeated requests for speedy delivery of the cocoa from the warehouse. As a result of these requests the seller wrote, on October 19, a letter, the material parts of which are as follows:

"Referring to 50 tons of usual good fair fermented Accra cocoa beans sold to you for shipment from the Gold Coast July/September or equivalent delivery from warehouse New York, through Messrs. Snyder & Wheeler, under contract dated July 7th, 1920, we beg to advise you that this cocoa is now afloat on the steamship Tuckanuck and will be delivered to you ex dock New York upon its arrival."

But after receipt of this letter the buyer continued requests for delivery suggesting warehouse delivery. The seller declined to comply with these requests, but reiterated its intention to make delivery per shipment from the Tuckanuck. On October 28, 1920, the seller again wrote:

"As requested by you in your letter of October 27th, we beg to say that the 50 tons of fermented Accra Cocoa sold by us through you to the W. H. Miner Chocolate Company, Springfield, Mass., for July/September shipment from the Gold Coast is now afloat on the Steamship Tuckanuck.

"We have in our possession bills of lading dated Seccondee, West Coast Africa, August 31, 1920, and Accra, West Coast Africa, September 3, 1920, and the cocoa sold to the W. H. Miner Chocolate Company will be delivered from the lots covered by either of the above-mentioned bills of lading.

"We have been in touch with the steamship company, who inform us that the Steamship Tuckanuck will probably *not* arrive at the port of New York before November 15, 1920, and *possibly* will not arrive until after December 1, 1920."

As late as the latter part of October, the plaintiff was told by the broker (acting for the defendant) "that as this contract called for either a shipment or equivalent, that his time to perform against his equivalent was pretty near to the finish, and that he would have to show something; we cautioned him"; that after "the Tuckanuck had been declared * * * I explained * * * that the delay of this boat was a hardship on the buyer, and that, as they had cocoa in store, why didn't they let the buyer have some of that cocoa? He said, 'No, the Miner Chocolate Company's cocoa is coming on the Tuckanuck, and they will have to wait for the Tuckanuck; we can't give them any store cocoa; they will have to wait until the Tuckanuck comes in.' That comment was made at least, I will go under oath, six different times."

The gist of the plaintiff's contention, saved by appropriate requests for rulings which the court below denied, obviously was that the contract permitted the plaintiff to perform by tendering the cocoa either from a July-September shipment from the Gold Coast, or by a warehouse delivery, substantially within the same time limit.

The defendant, on the other hand, contended that the plaintiff, by its letter of October 19, had finally elected the alternative of performing from the Tuckanuck, and that no other alternative was thereafter open to it.

A secondary contention of the defendant was that, if the alternative of delivery from the warehouse was after its letter of October 19, 1920, open to the plaintiff, the tender of warehouse delivery on December 18 was not seasonable under the terms of the contract. In support of this defense, the defendant

offered, and the court admitted subject to the plaintiff's exception, evidence of an alleged custom limiting the term "equivalent delivery from warehouse" to a period, variously stated by the defendant's witnesses, but roughly ending about 30 days from the last permissible date of sailing from the Gold Coast, so that, if such custom was proved and applicable, the tender of warehouse delivery after the arrival of the Tuckanuck on December 15 would be too late.

To meet this evidence, the plaintiff offered, and the court below excluded, subject to plaintiff's exception testimony that the steamship Schoodic left the Gold Coast with a cocoa shipment prior to September 30, and yet did not arrive in New York until some three weeks after the arrival of the Tuckanuck.

It is difficult to determine upon what theory the court below went in admitting the evidence of custom in order to limit the time within which seasonable warehouse delivery might be made; for, at the plaintiff's request and subject to the defendant's exception, the court ruled that the defendant—by its letter of December 20, 1920, refusing the plaintiff's offer of warehouse delivery on the specified ground that the plaintiff had by its letter of October 19, 1920, made a final election of delivery from the Tuckanuck—had waived all other defenses. As the cocoa on the Tuckanuck was concededly not of the quality required by the contract, if this was the only tender that under the contract the plaintiff was entitled to make, it would seem immaterial whether the warehouse delivery subsequently tendered was or was not seasonable.

[2] But we think the court erred in ruling that the defendant, by its letter of December 20, 1920, waived all claims of defense other than that the plaintiff, by notifying the purchaser that the goods were coming on the Tuckanuck, and by tendering goods from the Tuckanuck, was precluded from making any further tender. The defense that the tender of December 18 was too late was duly pleaded, and there was, on this record, neither estoppel nor waiver. "Waiver is an intentional relinquishment of a known right." Suburban Land Co. v. Brown, 237 Mass. 166, 168, 129 N. E. 291, 292. There is no evidence of such intentional relinquishment. Doubtless in some of the cases are found inadequately guarded expressions as to waiver, which, considered apart from the facts before the court, might be thought to sustain the ruling below and the plaintiff's present contention. But, on principle and the overwhelming weight of authority, a party does not lose a substantial right merely by failure to mention it. To ground an estoppel, it must appear that the other party, relying on that failure, changed its position. See 2 Williston on Sales, § 495; Galle v. Hamburg, etc., Co., 233 F. 424, 425, 147 C. C. A. 360. We find nothing in the cases cited and relied upon by the plaintiff which, on this record, constrain us to a different conclusion. Nor do we find any evidence of an estoppel. We treat this defence of unseasonable tender as open to the defendant, notwithstanding its letter of December 20.

[3] The plaintiff excepted to the court's refusal to rule that on all the evidence judgment must be for the plaintiff. The main question, therefore, before this court, is whether, under a proper construction of the contract, there was any substantial evidence to support the finding for the defendant. We do not overlook the limitations upon this court arising under rules laid down in such cases as Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401; Wear v. Imperial Glass Co., 224 F. 60, 139 C. C. A. 622; Dangberg Land Co. v. Day, 247 F. 477, 159 C. C. A. 531; White v. German Alliance Ins. Co., 103 F. 260, 43 C. C. A. 216; Gilbane v. Fidelity Co., 163 F. 673, 674, 90 C. C. A. 265; Ins. Co. v. Folsom, 18 Wall. 237, 21 L. Ed. 827; Cooper v. Omohundro, 19 Wall. 65, 69, 22 L. Ed. 47.

It is manifest that the finding below for the defendant must have been based on one of two theories:

(1) That the plaintiff had conclusively elected to perform its contract by allocating the cocoa on the Tuckanuck, and that the defendant was not thereafter bound to accept cocoa from the warehouse.

(2) That the tender of warehouse delivery on December 18, 1920, was too late, even if otherwise permissible under the contract.

We think neither defense was, under a proper construction of the contract, sustained by any substantial evidence.

[4] (1) There was no election. Plaintiff had, under the contract, a right to choose, within the contract time limit, either method of performance. Its stated intention of performance by allocation from the Tuckanuck (bad because of the quality of the cocoa) did not exhaust either the plaintiff's right or its obligation to make warehouse delivery. The case does not fall within the principle illustrated in the leading case of Norrington

v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366, and recently applied by this court in Burrows & Kenyon, Inc., v. Warren, decided December 7, 1925, 9 F.(2d) 1. Under this contract, title was to pass only by delivery in New York, subject to inspection of the goods by the defendant's brokers. The case is therefore plainly distinguishable from the commercial contracts in which the declaration of a ship is a material provision. Compare The Manhattan (C. C. A.) 284 F. 310; Nat. Bank v. Lamborn (C. C. A.) 2 F.(2d) 23, 36 A. L. R. 509.

Defendant's counsel concedes that if the plaintiff had made a defective tender of a July-September shipment from the Gold Coast, it would not thereby have been barred from performing by a subsequent July-September shipment from the Gold Coast. But if the declaration of a July-September shipment, bad because of honest mistake either as to the date of shipment, as to quantity or quality of the cargo, or for any other reason, left the seller at liberty, on discovering the error, to make another tender, that right must have been applicable, not merely to shipments from the Gold Coast, but to equivalent warehouse delivery. There would be neither logic nor business sense in holding that a defective designation of a Gold Coast shipment left it open to the seller to designate another Gold Coast shipment, but excluded an equivalent warehouse delivery.

The defendant's counsel also invokes the familiar principle that "the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence"—citing Old Colony Trust Co. v. Omaha, 230 U. S. 100, 118, 33 S. Ct. 967, 972 (57 L. Ed. 1410), and other cases. The application of that rule to this record leads to a result the reverse of that for which defendant contends; for, as indicated in the statement above, the defendant, many days after the plaintiff had declared its intention of making delivery from the Tuckanuck, insisted that, because of the delay, it should have warehouse delivery, and, indeed, never, until after the plaintiff had refused the defendant's compromise offer for the cocoa on the Tuckanuck, suggested that the contract was not still valid and outstanding. Otherwise stated, both defendant and plaintiff plainly construed the contract as we now construe it.

Without further elaboration, we think it clear that there was no election. Compare Watson v. Watson, 128 Mass. 152; Friederichsen v. Renard, 247 U. S. 207, 213, 38 S. Ct. 450, 62 L. Ed. 1075; Wm. W. Bierce, Ltd., v. Hutchins, 205 U. S. 340, 347, 27 S. Ct. 524, 51 L. Ed. 828; Snow v. Alley, 156 Mass. 193, 30 N. E. 691; Tetley v. Shand, 20 W. R. 206; Mill Dam Foundry v. Hovey, 21 Pick. (Mass.) 417; Borrowman v. Free, L. R. 4 Q. B. D. 500; Ashmore v. C. S. Cox Co. (1889) L. R. 1 Q. B. D. 436; Mann v. Eastern, etc., Co., 244 Mass. 100, 138 N. E. 244.

[5] (2) Was the tender of warehouse delivery on December 18 too late? In this connection, it is necesary to consider the admissibility of the evidence as to custom. We think the court erred in admitting such evidence in order to control the time within which plaintiff was entitled to make equivalent warehouse delivery. The contract was, in our view, plain on its face. It falls within the principles stated by Mr. Justice Story in the Reeside Case, 2 Sumn. 567, Fed. Cas. No. 11657: "A written and express contract cannot be controlled, or varied, or contradicted by a usage or custom."

[6] Besides, even if custom were arguably admissible, the evidence on this record utterly failed to show any clear, definite, certain, and uniform custom or usage. On the contrary, the defendant's witnesses were in hopeless confusion and disagreement as to what the alleged custom really was. We need not review the evidence in detail. It is enough to observe that the alleged custom was so little understood and observed during a period of three years after the making of the contract now in question that, as appeared from the testimony of the defendant's own witness Barrett, the Cocoa Merchants' Association then undertook to straighten it out by agreeing on a written rule fixing a time limit for such "equivalent warehouse deliveries." There was therefore no evidence properly before the court warranting a finding that the warehouse delivery, tendered promptly after the arrival of the Tuckanuck and the rejection of the cocoa thereon, was too late under the terms of the contract.

[7] The plaintiff's offer of evidence that the steamer Schoodic, taking a July-September shipment, did not arrive until three weeks after the Tuckanuck, was, under the construction we give to the contract, properly rejected as immaterial; for it is undisputed that the shipment by the Tuckanuck was within the terms of the contract, and that the tender from warehouse followed promptly on the defendant's proper rejection of the

Tuckanuck cargo. There was, therefore, no occasion to show a later arrival of a Gold Coast shipment.

[8] The result is that the tender of warehouse delivery on December 18 was strictly in accord with the terms of the contract. It follows that it was error for the court to refuse to rule, as the plaintiff requested, that on all the evidence the plaintiff was entitled to recover the difference between the contract price of the cocoa and the market price on December 18, 1920, with interest from that date. See Irvine v. Angus, 93 F. 629, 35 C. C. A. 501; Bayne v. United States, 195 F. 236, 115 C. C. A. 188.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion. The plaintiff in error recovers costs in this court.