### GREAT WESTERN ELEVATOR CO. v. WHITE et al.

(Circuit Court of Appeals, Eighth Circuit. October 20, 1902.)

#### No. 1,782.

1. AGENTS—SCOPE OF AUTHORITY—DRAWING DRAFTS.

An agent of an elevator company, in charge of one of its grain elevators, with general authority to draw drafts on the company to procure cash necessary to pay for grain purchased and to properly conduct the business, without any specific limitation on such authority by his contract or instructions given him, did not exceed his authority by

using, in payment for grain, money collected by him for a lumber company for which he was also agent, and remitting to such company in payment for the same by drafts drawn on the elevator company.

**2. SAME—LIMITATION BY CUSTOM OF BUSINESS—NOTICE TO CHARGE THIRD PARTIES.**

Evidence of a general custom or usage in the elevator business limiting the power of local agents, in the drawing of drafts, to such as were drawn in payment for grain bought or negotiated for cash at the time they were drawn, was not admissible to affect the lumber company, without proof that it had knowledge of such custom; there being no presumption that it had knowledge of a custom prevailing in a particular business in which it was not engaged.

**3. INSTRUCTIONS—APPLICABILITY TO ISSUES.**

The complaint in an action by the elevator company against the lumber company to recover the amount of drafts drawn on plaintiff by its agent, and paid by it to defendant, alleged that defendant did not pay to such agent, for the use of plaintiff, the amount named in the drafts, or any other sum, but received and collected the drafts, well knowing that plaintiff received no consideration therefor, but that plaintiff paid the same, supposing that the amounts had been furnished to its agent. The answer admitted the receipt and collection of the drafts, but denied that they were without consideration, and alleged that defendant paid the full amount thereof to the agent for plaintiff's use. *Held*, that the action was one to recover money paid under a mistake of fact, and that instructions that plaintiff was entitled to recover if the agent exceeded his authority in drawing the drafts were properly refused, as not applicable to the issue joined by the pleadings.

In Error to the Circuit Court of the United States for the District of North Dakota.

D. G. Maclay (W. F. Ball and J. S. Watson, on the brief), for plaintiff in error.

V. R. Lovell (John D. Benton and Daniel B. Holt, on the brief), for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was an action brought by the Great Western Elevator Company, plaintiff in error, against William H. White and William H. White Lumber Company, defendants in error, to recover the sum of $2,100, the amount paid on three drafts drawn by William Clemens, the agent of the plaintiff in error in charge of its business at Leonard, in the state of North Dakota, in favor of the defendant William H. White. The facts, as disclosed by the pleadings and the evidence, show that at all the times between August 1, 1900, and November 1, 1900, one William Clemens was in the employ of the plaintiff in error as its agent and grain buyer at the town of Leonard, N. D., and that during the same time he was in the employ of the William H. White Lumber Company, one of the defendants in error, in charge of its lumber yard and lumber business at Leonard, that, as agent and grain buyer for the plaintiff in error, it was necessary for Clemens, from time to time, to have and handle large sums of money, in the form of currency, wherewith to pay for grain purchased for the plaintiff in error, and delivered at its elevator and warehouse in Leon-

¶ 2. See Customs and Usages, vol. 15, Cent. Dig. §§ 23, 24.

ard; that the money used by Clemens in conducting the business of the plaintiff in error was furnished to him by the company, sometimes by shipments of currency from its home office, located at Minneapolis, Minn., and sometimes by Clemens drawing drafts on the company, and procuring the currency on these drafts by selling them to persons, companies, or corporations at or in the vicinity of Leonard, which drafts the elevator company paid in due course when the same were presented at the bank at which it did business in Minneapolis; that in conducting its business the elevator company was in the habit of furnishing Clemens with blank forms of drafts, drawn on the plaintiff at Minneapolis, with the word "Agent" printed under the line upon which the agent making use of the blank was to write his name as drawer; that he was to use these drafts in obtaining currency by filling the same out as to the name of the payee, the date upon which the draft was drawn, and the amount for which drawn. He was then to negotiate and sell the draft to such person, company, or corporation as would furnish to him, for the use of the elevator company in its said business at Leonard, the sum of money for which the draft was drawn. The drafts in suit were drawn, one on August 23, 1900, for $500; one on September 19, 1900, for $700; and one on October 25, 1900, for $900. The first draft, for $500, was paid on August 25, 1900; the second, for $700, on September 20, 1900; and the third, for $900, on October 26, 1900.

Four causes of action are set out in the complaint, but it will only be necessary for us to notice particularly the first cause of action, as the other causes of action proceed upon the same ground; the only difference being in the amount, each draft being set out in a different cause of action. In the first cause of action it is alleged, in substance, that Clemens, as agent of the elevator company, drew the draft therein described, for $500, in favor of the defendant William H. White, who the record shows was president of the William H. White Lumber Company; that the draft was duly presented to the elevator company for payment, and supposing the amount therein named had been paid to Clemens, its agent, for the purpose of carrying on its business at Leonard, it paid the same. The complaint then proceeds:

"That in truth and in fact the said defendants did not, nor did either of them, as plaintiff is now informed and verily believes to be the fact, pay to the said William Clemens, for the use of plaintiff, said sum of five hundred dollars ($500), or any other sum or amount whatever."

And further, upon information and belief:

"That upon making the transaction aforesaid, defendants, and each of them, well knew that no consideration passed from them, or either of them, to the plaintiff, for five hundred dollars ($500), which they received upon said draft; that in making such transaction they were in fact receiving, and did in fact receive, from the plaintiff herein, the sum of five hundred dollars ($500), without having paid plaintiff any consideration whatever therefor."

And further, upon information and belief:

"That the said William Clemens was on the date of such transaction, namely, August 23, 1900, largely indebted to the defendants, as their agent or otherwise, and that defendants, for the purpose of securing payment, in whole or in part, of the indebtedness aforesaid, from the said William

Clemens, received and accepted from him the said draft, and thereafter obtained upon said draft the sum of $500 from the said plaintiff, and that defendants well knew that the money so obtained by them in such transaction was not the money or the property of the said William Clemens, and further knew that the said William Clemens, as agent of plaintiff, had neither right nor authority to make drafts upon plaintiff, to be used for the purpose for which said draft was so used; that the said William Clemens, in so drawing said draft and delivering the same to the defendants, exceeded the power and authority vested in him in respect thereto, and in drawing said draft wholly exceeded the scope of the authority vested in him as such agent for the plaintiff."

The answer admits the drawing of the draft for $500 on the 23d day of August, 1900; that one of the defendants was named therein as payee, and that the draft was delivered to the defendant in error William H. White Lumber Company; that the same was thereafter presented to and paid by the elevator company. The answer then alleges that said Clemens made and delivered the said draft by the authority of the plaintiff, and acted within the scope of his authority as plaintiff's agent in so doing, and that the defendant William H. White Lumber Company paid as consideration therefor, and the said Clemens, as plaintiff's agent, received in money for the use of the plaintiff in the purchase of grain at the said station of Leonard, the full sum of $500, the amount of the draft.

At the trial the court admitted evidence tending to show the scope of the agent's authority to draw and negotiate drafts drawn by him upon the company, either through instructions given him by the company, or by the practice pursued by the company with reference to the power possessed and used by its agent, but rejected an offer of proof by which it was sought to show the extent of this power of issuing drafts by local agents under the custom or usage of elevator companies generally doing business in North Dakota and other Northwestern states.

It was insisted at the argument that the evidence admitted upon this branch of the case showed, without dispute, that the local agent of the elevator company had no power to issue drafts, except in payment for grain bought at the time of the issuance of the draft, or for cash to the amount of the face of the draft delivered or paid to the agent at the time of the issuance of the draft; but complaint was made that it was deprived of the benefit of this evidence by an instruction to the jury to the effect that the agent's authority was sufficient, for the purposes of the case, at least, to enable him to take money which he collected on behalf of the lumber company and apply it in course of business to the purchase of wheat for the elevator company. After a careful examination of the testimony of Mr. Mitchell, the general superintendent of the plaintiff in error,—the only witness who testified upon this question,—we are unable to concur in the view that this evidence showed without dispute that the local agent had no power to issue drafts excepting in payment for grain bought at the time of the issuance of the draft, or for cash to the amount of the face of the draft delivered or paid to the agent at the time of the issuance of the draft. Mr. Mitchell's testimony tends to show that Clemens, as the agent of the plaintiff in error, had authority to obtain money by issuing drafts;

that he had such general authority as was necessary to properly conduct the business at the station where he was employed; that no limitation by contract of employment, either oral or written, defining or limiting his authority, was placed upon the agent, outside of the circular instructions relating to the price at which grain should be bought, and the amount of money he should have on hand. This being the situation, there was no error in the instruction complained of, for the lumber company clearly had the right to take such drafts in dealing with the agent of the elevator company, provided it gave full consideration therefor. The evidence offered by the plaintiff to show that by custom or usage the authority of the agent was limited to issuing drafts for currency at the time the currency was paid to him was, we think, properly excluded. No proper foundation had been laid for the introduction of such evidence. Knowledge of the custom sought to be proved, being peculiar to a particular business, must be first brought home to the party sought to be charged, where, as in this case, the party to be charged was engaged in a separate and distinct line of business. Whatever may be the rule as to presumptive notice of a custom or usage in the case of parties engaged in the same business, clearly no such presumption can be indulged in where the party to be charged is engaged in a separate line of business. Isaksson v. Williams (D. C.) 26 Fed. 642; Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225; Iron Co. v. Blake, 144 U. S. 476, 12 Sup. Ct. 731, 36 L. Ed. 510.

Several assignments of error are based upon the refusal of the court to give a number of requests for instructions submitted on behalf of the plaintiff. A radical error exists in all these requests, due to the fact that they are not applicable to the issues actually on trial before the court and jury. To show the theory involved in these requests for instructions, it will only be necessary to quote the first and second of the series:

"First. You are instructed that the agent, William Clemens, had no power or authority to draw any drafts upon the plaintiff elevator company for any purpose excepting that for paying for grain purchased by him for said Elevator Company, or in exchange for currency actually paid to him at the time of the issuance and delivery of such drafts. Second. If you find that any moneys of the defendant lumber company were used by William Clemens in the purchase of grain for the plaintiff, and further find that said moneys were so used by the said Clemens before the issuance and delivery of the drafts described in the pleadings to the said defendant lumber company, then your verdict must be in favor of the plaintiff."

It only requires an examination of the complaint to show that these requests for instructions were based upon a theory not within the issues as made by the pleadings. The allegations of the complaint were to the effect that Clemens, as agent of the elevator company, drew the draft; that the company, supposing the amount therein named had been paid to its agent for the purpose of carrying on its business at Leonard, paid the same. It then alleges that the defendant did not pay to the agent of the plaintiff, for the use of the plaintiff, the amount named in the draft, or any other sum, and that in making the transaction the defendants, and each of them, well knew that no consideration passed from them to the plaintiff for the $500 which they received upon the draft, and that in making the transaction they were

in fact receiving and did receive from the plaintiff the amount therein named, without having paid the plaintiff any consideration whatever therefor. The answer admitted the drawing of the draft by Clemens, and its receipt by the defendant, but denied that it was without consideration. Upon the contrary, it was affirmatively alleged in the answer that the defendant lumber company paid therefor to Clemens, and that Clemens, as the agent of the company, received for the draft, in money, for the use of the plaintiff in the purchase of grain, the full amount of the draft. It is clearly apparent that counsel for the plaintiff, in all the requests submitted, mistook the issues involved under the pleadings, and treated the case as one to recover the proceeds of drafts drawn and negotiated by the plaintiff's agent without authority. This was not the issue tendered by the pleadings, which the court and jury were to try. If the action were based solely upon the ground that the agent of the elevator company was without authority to issue the draft in suit, then the allegation in the petition that the defendant did not pay to Clemens, for the use of the plaintiff, any consideration whatever for the draft, was wholly unnecessary, as that fact could make no difference. On the other hand, if the action was one for the recovery of money paid by mistake of fact, which we think it was, this was a necessary allegation; hence all of the instructions asked by the plaintiff were properly refused, and none of the assignments of error based on the refusal of the court to give these requests are well taken.

The circuit court, as we view the case, rightly apprehended the issue that was involved, and rightly instructed the jury to the effect that this was an action to recover back money paid to the defendant through a mistake of fact, and that the principal question in the case was, did Clemens receive from the funds of the lumber company, and apply to the use of the elevator company, an amount equal to the face of the drafts? that, if he did, there was no mistake in paying the drafts, and the elevator company could not recover back the money which it had paid; that if the agent did not receive from the funds of the lumber company an amount equal to the draft, and apply the same to the use of the elevator company, then the elevator company was induced to pay the drafts through a mistake, and was entitled to recover the money back.

Some other assignments of error are based upon instructions given by the court to the jury, but, in view of what we have already said, it becomes unnecessary to restate them, as counsel for the plaintiff in error concede, if the action was one for the recovery of money paid by mistake, "that the charge of the court was more favorable to the plaintiff than the law and situation of the parties justified."

Upon the question, whether Clemens, as agent of the plaintiff in error, did in fact apply to the use of the plaintiff, out of the funds of the defendant, the sums for which the drafts were drawn, the evidence was conflicting, and the question was submitted to the jury under proper instructions.

While we have not, in the disposition of this case, noticed the several assignments of error separately, they have all been carefully examined, and we find no error for which the judgment of the circuit court should be reversed. Judgment affirmed.