# Prohibitions and Penalties Under Section 582 of the 1990 Foreign Operations, Export Financing, and Related Programs Appropriations Act

Section 582 of the 1990 Foreign Operations, Export Financing, and Related Programs Appropriations Act prohibits only the following: an explicit quid pro quo arrangement pursuant to which both the United States and another government or person that is to receive financial assistance from the United States agree that receipt of the assistance is expressly conditioned upon the recipient undertaking an action that the United States would be specifically prohibited by United States law from carrying out.

Neither violation of section 582, nor conspiracy to violate section 582, is punishable as a criminal offense.

April 16, 1990

MEMORANDUM OPINION FOR THE LEGAL ADVISER
DEPARTMENT OF STATE

This memorandum responds to your request for our opinion on (1) the scope of the prohibition in section 582 of Public Law No. 101-167, 103 Stat. 1195, 1251 (1989), the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1990, and (2) whether violation of or conspiracy to violate section 582 is punishable as a criminal offense. We conclude, as did your office,[1] that section 582 prohibits only an explicit quid pro quo arrangement pursuant to which both the United States and another government or person that is to receive financial assistance from the United States agree that receipt of the assistance is expressly conditioned upon the recipient undertaking an action that the United States would be specifically prohibited by United States law from carrying out. As to the second question, we also concur in your conclusion that Congress did not intend to punish criminally either violation of or conspiracy to violate section 582.

I.

The first version of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1990 ("the Act") passed by Congress

---

[1] Letter for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Abraham D. Sofaer, Legal Adviser, United States Department of State (Jan. 19, 1990).

was H.R. 2939, 101st Cong., 1st Sess. (1989). President Bush vetoed that measure on November 19, 1989, *see* 2 Pub. Papers of George Bush 1545 (Nov. 19, 1989), in large part because of constitutional concerns with the version of section 582 that appeared in that Act. *Id.* Two days later, on November 21, 1989, Congress passed that Act in its current form, specifically to address the Administration's concerns that had prompted the President's veto. *See, e.g.,* 135 Cong. Rec. S16,332 (daily ed. Nov. 20, 1989) (statement of Sen. Leahy); *id.* at H9088 (statement of Rep. Obey).

Section 582(a) of the Act provides as follows:

> None of the funds appropriated by this Act may be provided to any foreign government (including any instrumentality or agency thereof), foreign person, or United States person in exchange for that foreign government or person undertaking any action which is, if carried out by the United States Government, a United States official or employee, expressly prohibited by a provision of United States law.

103 Stat. at 1251. It is clear from this and the remaining provisions of section 582[2] that the section was intended to be only a narrow appropriation limitation, not a criminal prohibition. Congressman Edwards explained the purpose of the section in this way:

> What we prohibit in this bill is a quid pro quo which would allow the money we are appropriating here for the United States' foreign policy purposes to be provided to another government or person in exchange for that government or person agreeing to do something which, if it were done by an American citizen or by our Government, would be a violation of U.S. law. That is all it does. It prohibits a quid pro quo.

---

[2] Section 582(b) and (c) provides:

    (b) For the purposes of this section the term "funds appropriated by this Act" includes only (1) assistance of any kind under the Foreign Assistance Act of 1961; and (2) credits, and guaranties under the Arms Export Control Act.

    (c) Nothing in this section shall be construed to limit —

        (1) the ability of the President, the Vice President, or any official or employee of the United States to make statements or otherwise express their views to any party on any subject;

        (2) the ability of an official or employee of the United States to express the policies of the President; or

        (3) the ability of an official or employee of the United States to communicate with any foreign country government, group or individual, either directly or through a third party, with respect to the prohibitions of this section including the reasons for such prohibitions, and the actions, terms, or conditions which might lead to the removal of the prohibitions of this section.

103 Stat. at 1251.

135 Cong. Rec. H9089 (daily ed. Nov. 20, 1989). By its terms, section 582(a) applies only to funds appropriated by the Act; unlike other similar provisions, section 582 does not purport to restrict in any manner funds that are appropriated by other acts.[3] Section 582 is further limited by the restrictive definition of "funds" in subsection (b) and the additional interpretive restrictions imposed by subsection (c). Thus, for example, subsection (c) -- despite the prohibition in subsection (a) — explicitly permits an employee of the United States to express the view to another government that it should undertake an action that would be prohibited by United States law, because "nothing" in section 582 "shall be construed to limit the ability of . . . [any] employee of the United States to . . . express their views to any party on any subject." And the restriction extends only through fiscal year 1990.[4]

Perhaps the most significant substantive term in the provision is "in exchange for" in subsection (a), and this term was the subject of considerable discussion in the legislative history. It is evident that this language was intended as a significant limitation on what otherwise might be read as prohibited under this section.

Senators Cystine and Rudman engaged in an extended colloquy to clarify the meaning of the phrase. Senator Rudman explained:

> It is not Congress' intent in approving this amendment to create a trap for the unwary. Accordingly, there is no intent to prohibit the provision of U.S. assistance where, coincidentally, the recipient undertakes an action that the United States itself is prohibited to carry out. Therefore, the words "in exchange for" in the [section] must be understood to require an agreement between the United States and the aid recipient under which, as an express condition for receiving the U.S. assistance, the recipient undertakes an action which the United States itself is prohibited to carry out.

135 Cong. Rec. S16,363 (daily ed. Nov. 20, 1989).

Notably, earlier the same day, Senator Kasten had introduced a substitute version of section 582(a) to clarify that the subsection was only to apply to

---

[3] *See, e.g., section* 403 of Public Law No. 101-45, tit. IV, 103 Stat. 97, 128 (1989) ("No funds appropriated under this Act *or any other Act* shall be available to the Bureau of Alcohol, Tobacco and Firearms for the enforcement" of various laws.); section 303 of Public Law No. 98-396, 98 Stat. 1369, 1422 (1984) ("None of the funds made available to the United States Postal Service under this Act *or any other Act* may be used to restructure employee compensation practices as in effect under the most recently effective collective bargaining agreement. . . .") (emphasis added).

[4] Additionally, by its terms, the section is violated only where the specified funds are provided and the recipient government or person actually undertakes the action that would be prohibited under the law of the United States. Thus, a request by a United States official that the government or person undertake that action is, in itself, insufficient to implicate the prohibition of the section.

"an actual quid pro quo," "pursuant to an agreement under which, as an express condition for receipt of such assistance, the recipient is required to take the prohibited action." The proposed amendment provided:

> None of the funds appropriated for assistance by this Act may be provided to any foreign government (including any instrumentality or agency thereof), foreign person, or United States persons pursuant to an agreement under which, as an express condition for receipt of such assistance, the recipient is required to fund or carry out a military or foreign policy activity which is expressly prohibited by a provision of United States law.

*Id.* at S16,361. Following his colloquy with Senator Rudman clarifying that section 582(a) as drafted was indeed intended by Congress only to apply to such a narrow class of circumstances, Senator Kasten withdrew his amendment. *Id.* at S16,361-63.

Congressman Obey, the chairman of the House subcommittee responsible for the Act and one of the drafters of section 582, similarly stated that "the word 'exchange' should be understood to refer to a direct verbal or written agreement." *Id.* at H9231 (daily ed. Nov. 21, 1989). As noted above, Congressman Edwards, the ranking Republican member of the House subcommittee and another of the drafters of section 582, declared that section 582 was designed to prohibit only quid pro quo arrangements. *Id.* at H9089 (daily ed. Nov. 20, 1989). President Bush in his signing statement accompanying the Act also stated:

> I agree with the view expressed on the House and Senate floor that this section is intended only to prohibit "quid pro quo" transactions — that is, transactions in which U.S. funds are provided to a foreign nation on the express condition that the foreign nation provide specific assistance to a third country, which assistance U.S. officials are expressly prohibited from providing by U.S. law. As reflected both in Congressman Edwards' statements and in the explanatory colloquy between Senators Kasten and Rudman, a "quid pro quo" arrangement requires that both countries understand and agree that U.S. aid will not be provided if the foreign government does not provide the specific assistance.
>
> . . . .
>
> It is important to note that Section 582 does not affect the ability of the executive branch to urge any course of action upon a foreign government or any third party. In addition, the section applies only where there is a provision of U.S. law

that "expressly prohibits" the United States Government, or a U.S. official or employee, from undertaking a particular action, and thus would not apply to provisions that merely limit funding to undertake such an action.

In these and other key respects, Section 582 is substantially narrower than a related provision that prompted my veto of H.R. 2939 on November 19, 1989.

2 Pub. Papers of George Bush 1573-74 (Nov. 21, 1989).

It is clear from the foregoing that the term "in exchange for" was purposely chosen to ensure prohibition of only explicit quid pro quo arrangements pursuant to which both the United States and the recipient nation(s) intend and agree, verbally or in writing, that receipt of United States assistance is expressly conditioned upon the recipient undertaking an action that the United States would be specifically prohibited by United States law from carrying out. We believe that the section should be interpreted and applied consistently with this purpose.

## II.

You also requested our opinion on whether either violation of section 582 or conspiracy to violate that provision could give rise to criminal penalties. We believe that it is clear that Congress intended that neither violation of nor conspiracy to violate the section would be punished criminally.

Section 582 contains no criminal penalties for its violation, nor does it incorporate by reference any penalties existing under criminal (or any other) law. If Congress had intended to render United States officials — including the President himself — potentially criminally liable under the section, it may fairly be assumed that this intention would have been evident from the face of the statute. *See, e.g.*, *United States v. Campos-Serrano*, 404 U.S. 293, 297 (1971) (a defendant "'is not to be subjected to a penalty unless the words of the statute plainly impose it,'" (quoting *Keppel v. Tiffin Savings Bank*, 197 U.S. 356, 362 (1905))). In fact, by Senate amendment, the State Department Authorization Act of FY 1990 that the President vetoed contained a leveraging provision that had expressly included criminal penalties.[5] Thus, there can be little question that when it passed section 582 without

---

[5] *See* H.R. 1487, 101st Cong., 1st Sess. § 109 (1989). Section 109 would have amended the Foreign Assistance Act of 1961 to provide in part:
  (a) Prohibition. — (1) Whenever any provision of United States law expressly refers to this section and expressly prohibits all United States assistance, or all assistance under a

Continued

providing for criminal penalties, the Congress purposely chose not to criminally punish violations of section 582.

This intention is confirmed by the legislative history. Senator Rudman stated unequivocally that "[section 582] does not contain criminal penalties." 135 Cong. Rec. S16,362 (daily ed. Nov. 20, 1989); *id.* (section 582 "contains no criminal sanctions"). He observed: "If a criminal penalty were intended, it would have been provided on the face of the provision. In the absence of such a provision, it should be understood that Congress intends that no criminal penalties will apply to the [section]." *Id.* Senator Moynihan had introduced legislation similar to section 582 that would have *explicitly* provided for criminal penalties. *Id.* Accordingly, we conclude that Congress did not intend to, nor did it impose criminal penalties for violation of section 582.[6]

That Congress chose not to criminalize violations of section 582 does not necessarily mean that it did not intend to punish criminally, under 18 U.S.C. § 371,[7] a conspiracy to violate the provision. It is clear also, however, that

---

[5](....continued)

specified United States assistance account, from being provided to any specified foreign region, country, government, group, or individual for all or specified activities, then no officer or employee of the Executive branch may --

. . . .

(B) use any United States funds or facilities to assist any transaction whereby a foreign government (including any instrumentality or agency thereof), foreign person, or United States person provides any funds or property to any third party . . . .

if the purpose of any such act is the furthering or carrying out of the same activities, with respect to that region, country, government, group, or individual, for which United States assistance is expressly prohibited

. . . .

(b) Penalty. — Any person who knowingly and willfully violates the provision of subsection (a)(1) shall be imprisoned not more than 5 years or fined in accordance with title 18, United States Code, or both.

Senator Moynihan noted in debate on section 582 that section 109, the explicit criminal leveraging provision, "is not before us tonight. It is part of the State Department authorization bill. Should it not become law in this session . . . we will return to this matter in the next one." 135 Cong. Rec. S16,362 (daily ed. Nov. 20, 1989). This comment, coming immediately after Senator Rudman's statement that section 582 "does not contain criminal penalties," we believe is best understood as Senator Moynihan's acquiescence in what by that time appeared to be the Senate's conclusion that criminal penalties would not attach.

[6]Congressman Obey, the principal draftsman of section 582, never stated that violation of the provision would be punishable criminally. Even after attention had been focused on the specific question of possible criminal penalties under the provision, he commented only that the provision "is not an attempt to hamstring government officials in the course of their normal duties or to make them vulnerable to wayward or runaway prosecutors." 135 Cong. Rec. H9231 (daily ed. Nov. 21, 1989).

[7]Section 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

Congress did not intend for the general conspiracy statute to apply to conduct proscribed by section 582. In fact, Congress considered potential applicability of 18 U.S.C. § 371, and determined that it would not apply to violations of section 582. On November 20, 1989, Senators Kasten and Rudman specifically discussed on the floor of the Senate the fact that the general conspiracy statute would have no applicability to section 582:

> Mr. Kasten. I note that section 582 . . . does not provide a criminal penalty for violation of its leveraging prohibition. Does this indicate congressional intent that there be no criminal penalty for violation of section 582?

> Mr. Rudman. Yes Senator, that is my understanding. If a criminal penalty were intended, it would have been provided on the face of the provision. In the absence of such a provision, it should be understood that Congress intends that no criminal penalties will apply to the [section]. In particular, *it should be understood that the criminal conspiracy statute will not apply to the [section].*

> . . . .

> Mr. Kasten. I want the record to reflect that my support for section 582 is conditioned on the clarifications that [the] Senator has provided. I could not vote for this bill if I believed that section 582 could provide a basis for criminal liability . . . . I know that many Senators on my side of the aisle share this view.

> Mr. Rudman. I fully agree with this interpretation of section 582, and I know that the votes of many Senators are similarly conditioned.

135 Cong. Rec. S16,362-63 (daily ed. Nov. 20, 1989) (emphasis added). Immediately afterwards, Senator Dole concurred that section 582 should not be interpreted as giving rise to any criminal penalties:

> We cannot have lawful, but confident and creative, handling of our foreign policy — if every administration official hereafter is always looking over his shoulder to see if some aggressive special prosecutor — out to get his name in the headlines — might be concocting some fanciful charge based on vague language.

90

*Id.* at S16,363.[8]  Senator Rudman explained the rationale for not imposing criminal penalties:

> The absence of a criminal penalty reflects the fact that the leveraging prohibition is to apply across-the-board to essentially all existing prohibitions on U.S. assistance.  Without individually examining these prohibitions to determine whether, in the context of each prohibition, a criminal penalty for leveraging would be appropriate, it would be unwise for Congress to apply such a penalty across-the-board.

*Id.*

President Bush signed the bill into law on this understanding that neither violation of section 582, nor conspiracy to violate the section, would be criminally punishable:

> Consistent with the expressed intent of the Congress and to avoid constitutional problems, I intend to construe this section [section 582] narrowly . . . .  The Senate record also makes clear that neither the criminal conspiracy statute, nor any other criminal penalty, will apply to any violation of this section.  My decision to sign this bill is predicated on these understandings of Section 582.

2 Pub. Papers of George Bush 1573 (Nov. 21, 1989).[9]  Thus, there appears to have been consensus agreement that the general conspiracy provisions of 18

---

[8] Consistent with the view that Congress did not intend violations of, or conspiracies to violate section 582 to be criminally punishable, Senator Leahy described section 582 as "a bipartisan revision [of the earlier version of section 582 vetoed by President Bush] done by Congressmen Obey and Edwards to make it more acceptable to the administration." 135 Cong. Rec. S16,332 (daily ed. Nov. 20, 1989). The Administration had earlier notified Congress that the predecessor version of section 582 was unacceptable, *inter alia*, precisely because the threat of criminal prosecutions under that version "would clearly have a negative impact on the conduct of foreign relations." Letter for Congressman Jaimie L. Whitten, Chairman, House Committee on Appropriations, from Carol T. Crawford, Assistant Attorney General, Office of Legislative Affairs, at 2 n.2 (Nov. 1, 1989). Senator Dole had also informed the Senate, prior to passage of the Act, that "Senior White House officials have told me that they would advise the President to veto the bill unless this matter [the scope of section 582, including the question of criminal penalties] is satisfactorily clarified." 135 Cong. Rec. S16,363 (daily ed. Nov. 20, 1989).

[9] The President's construction of section 582 in his signing statement is particularly important in this context.  The President's interpretation of the section constitutes his instruction, as head of the executive branch, on implementation of the section -- an instruction with which this Department, charged with criminal law enforcement, must comply.  Courts properly look to presidential signing statements to assist in the interpretation of statutes. *See, e.g., Berry v. Department of Justice,* 733 F.2d 1343, 1349-50 (9th Cir. 1984).

U.S.C. § 371 would have no applicability to section 582. Indeed, there is no evidence whatever to the contrary.[10]

In *United States v. Hutto*, 256 U.S. 524, 528-29 (1921), the Supreme Court held that a defendant could be indicted for criminal conspiracy to commit an offense against the United States[11] even where the predicate offense was not itself criminally punishable. There, the underlying offense was punishable by a civil penalty. It may be that conspiring to violate any federal law — even a law that itself contains no criminal or civil penalties — may be criminally punishable under 18 U.S.C. § 371 as a conspiracy to commit an offense against the United States.[12] We need not determine here, however, the full reach of the principle announced in *Hutto*. The availability of section 371 will always be a question of legislative intent. *See, e.g., United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952). Thus, where, as here, there is affirmative, uncontradicted evidence that Congress considered the question and intended that criminal penalties under section 371 not be available, that section may not be invoked to impose such a penalty.[13] Accordingly, we conclude that a conspiracy to violate section

---

[10] *Compare* 42 U.S.C. § 3795b (explicitly providing that the programs and projects in that chapter "shall be subject to the provisions of section 371 of Title 18").

[11] In *Hutto*, the defendants were charged with violation of section 37, Criminal Code, which was in substance identical to 18 U.S.C. § 371. Section 37 provided: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined . . . ." Act of Mar. 4, 1909, ch. 321, 35 Stat. 1096.

[12] We have found no case addressing the validity of an indictment or conviction under section 371, where the charge was conspiracy to commit an offense against the United States and the underlying offense that the defendants allegedly conspired to commit did not itself carry either criminal or civil penalties.

However, even if one could not be charged with or convicted of conspiring to commit an offense against the United States under these circumstances, it still could be that prosecution would be possible under section 371. Section 371 also criminalizes conspiracy to defraud the United States The offense of conspiracy to defraud the United States does not seem to depend upon the existence and character of a separate statutory or other prohibition, as does the offense of conspiring to commit an offense against the United States. *See, e.g., Haas v. Henkel*, 216 U.S. 462, 479-80 (1910) ("[A]ny conspiracy which is calculated to obstruct or impair [a governmental department's] operations and reports as fair, impartial and reasonably accurate would be to defraud the United States "); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) (to defraud the United States "means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest") Several cases have sustained either indictments or convictions for conspiracy to defraud the United States where there was not any specific prohibition of the allegedly fraudulent conduct. *Haas v. Henkel*, 216 U.S. 462 (1910); *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924 (1958); *United States v. Anderson*, 579 F.2d 455 (8th Cir.) (*dicta*), *cert. denied*, 439 U.S. 980 (1978).

[13] That Congress explicitly considered and decided against the application of section 371 to conduct proscribed under section 585 distinguishes the circumstances herein discussed from those underlying the indictment of Oliver North and others in *United States v. Poindexter*, Crim. No. 88-0080 (D.D.C.). · That indictment, while charging a conspiracy to violate several criminal statutes that themselves carry explicit penalties, also charged conspiracies to violate the so-called Boland Amendment, as well as more general prohibitions (*e.g.*, conspiracy to defraud the United States "by impeding, impairing, defeating and obstructing the lawful governmental functions of the United States, including . . congressional control of appropriations and exercise of oversight"). Congress did not explicitly consider the application of 18 U.S.C. § 371 to alleged violations of the Boland Amendment. There is similarly nothing to indicate that Congress intended to foreclose application of section 371 to the more general conspiracy violations with which the defendants were charged.

582 would not be punishable under 18 U.S.C. § 371.[14]

This is not to say that section 582 may be violated with impunity. The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Moreover, it can be anticipated that Congress will seek to monitor executive branch compliance with the section, and that an intentional failure to comply may provoke any of a host of constitutional or political sanctions, if not remedial legislation. The State Department and other affected executive agencies therefore should, by means of appropriate directives, urge compliance with the prohibition.

## CONCLUSION

We conclude for the reasons set forth above that section 582 prohibits only an explicit quid pro quo arrangement pursuant to which both the United States and another government or person that is to receive financial assistance from the United States agree that receipt of the assistance is expressly conditioned upon the recipient undertaking an action the United States would be specifically prohibited by United States law from undertaking. Additionally, we conclude that neither violation of section 582 of Public Law No. 101-167, nor conspiracy to violate section 582, is punishable as a criminal offense.[15]

J. MICHAEL LUTTIG
*Principal Deputy*
*Assistant Attorney General*
*Office of Legal Counsel*

---

[14] The fact that section 371 is unavailable in this context of course would not prevent prosecution for conduct violative of other criminal statutes.

[15] The Criminal Division of the Department of Justice concurs in these conclusions.